**SO ORDERED.**

**SIGNED this 13th day of November, 2009.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SAMUEL RODRIGUEZ and | ) | Case No. 09-30348-LMC |
| CORINA RODRIGUEZ, | ) | Chapter 13 |
| | ) | |
| | ) | |
| Debtors. | ) | |

**DECISION ON DEBTORS' MOTION TO DETERMINE THE RIGHT TO POSSESSION OF FUNDS OBTAINED IN JUDGMENT/SETTLEMENT**

**A. The Pleadings**

Came on for hearing the foregoing matter. On February 24, 2009 (the "Petition Date"), the above-captioned debtors (the "Debtors") filed a voluntary petition under chapter 13 of the Bankruptcy Code. On August 19, 2009, the Debtors filed their Motion to Determine the Right to Possession of Funds Obtained in Judgment/Settlement (the "Motion") [Docket No. 37]. On September 8, 2009, Stuart C. Cox, the chapter 13 trustee (the "Trustee"), filed an objection to the Motion (the "Objection") [Docket No. 39]. On August 19, 2009, the Debtors also filed a Motion for Compromise of Controversy (the "Settlement Motion") [Docket No. 38]. And, finally, on September 10, 2009, the Debtors filed their Amended Motion to Determine the Rights to

1

Possession of Funds Obtained in Judgment/Settlement (the "Amended Motion," and, together with the Motion, the "Motions") [Docket No. 40], to which the Trustee filed an amended objection (the "Amended Objection," and, together with the Objection, the "Objections") [Docket No. 45] on September 29, 2009.

The Motions provided the following facts. On September 16, 2008, prior to the Petition Date, the Debtors were involved in a car accident. Thus, among the estate's assets was the Debtors personal injury claim[1] for injuries resulting from the pre-petition accident. Presumably post-petition,[2] the Debtors obtained a settlement (the "Settlement") in the amount of $3,500. From the Settlement, the Debtors wish to pay: Physicians Hospital $1,142, El Paso Chiropractic Group $529, and David Escobar $1,166.55. The remainder of the Settlement – $662.45 – was to be paid to the Debtors, who would use the money to cure plan payment delinquencies. The Trustee's Objections requested that the Motions be denied in full. The Objections noted that both Physicians Hospital and El Paso Chiropractic Group (collectively, the "Medical Creditors") were unsecured pre-petition creditors of the Debtors. Moreover, although Physicians Hospital was scheduled as an unsecured creditor, it failed to timely file a proof of claim. El Paso Chiropractic Group was omitted as a creditor, but it likewise failed to file a timely proof of claim.

David Escobar is the attorney who prosecuted the personal injury claim on behalf of the Debtors. The Debtors filed a motion to retain Mr. Escobar on May 6, 2009 [Docket No. 21] and the court granted the request on June 12, 2009 [Docket No. 29], although the relief granted was

---

[1] The original Motion stated that the Debtors had a claim against David Escobar, the attorney who prosecuted the personal injury litigation on the Debtors' behalf. This error was corrected in the Amended Motion. In their Settlement Motion, the Debtors reiterated the facts and stated that they, along with David Escobar, had negotiated a settlement with Vanya Ordonez whereby Infinity County Mutual Insurance Company would pay the Debtors the net sum of $662.45. For the reasons stated below, the Debtors are to be awarded $2,333.45.

[2] The court says 'presumably' because none of the pleadings provide when the Settlement agreement was reached. However, due to the very existence of the Settlement Motion, the court can safely assume the Settlement was not reached until after the Petition Date.

not on a *nunc pro tunc* basis to the Petition Date. The order authorized the attorney to be paid on a contingent fee basis.

The court held a hearing (the "Hearing") on the Motions on November 3, 2009. There was no dispute as to the underlying facts of the case and only legal issues were argued. The court ruled at the conclusion of the hearing, but advised counsel that it would later publish the reasons for its ruling. This decision is that published ruling.

**B. Analysis**

*The Settlement Motion*

The court had previously approved the Settlement Motion on September 22, 2009 [Docket No. 43]. The only issue that remains is the manner in which the Settlement funds are distributed amongst the parties in interest in this case.

*Attorneys' Fees*

The retention application for Escobar did not assert a statutory basis for his retention. The retention application reflects that Escobar was retained on a contingency fee basis, to be paid "Thirty Three and One-Third (33 1/3%) of any and all amounts recovered, in any matter." *Affidavit of David Escobar*, ¶ 4 at 1. Although the application does not cite to a specific section of the Bankruptcy Code, the statutory basis for retention on a contingent fee is section 328(a) of title 28. *See* 11 U.S.C. § 328(a); *see also Peele v. Cunningham (In re Texas Sec., Inc.)*, 218 F.3d 443, 445-446 (5th Cir. Tex. 2000). Because the court already approved Escobar's retention on that basis, it is not now free to revisit those fees under section 330, unless it were to find that circumstances that would otherwise justify a reduction in those fees could not have been anticipated at the time the court approved Mr. Escobar's retention on that basis. *Peele v. Cunningham (In re Texas Sec., Inc.)*, 218 F.3d 443, 445-446 (5th Cir. 2000) ("Section 328 applies when the bankruptcy court approves a particular rate or means of payment, and § 330

3

applies when the court does not do so. Once the bankruptcy court has approved a rate or means of payment, such as a contingent fee, the court cannot on the submission of the final fee application instead approve a 'reasonable' fee under § 330(a), unless the bankruptcy court finds that the original arrangement was improvident due to unanticipated circumstances as required by § 328(a)."); *Gibbs & Bruns LLP v. Coho Energy, Inc. (In re Coho Energy, Inc.)*, 395 F.3d 198, 204 (5th Cir. 2004) ("Under section 328(a), a fee agreement approved by the bankruptcy court could be reduced only if the terms of the contract were 'improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.'") Here, there has not been so much as a whisper by any party in interest (including the Trustee) that circumstances even exist, much less that any such circumstances could not have been anticipated at the point Escobar's retention was authorized, that would justify a second look at Mr. Escobar's contingent fee. Consequently, the contingent fee arrangement must be honored. The award of $1,166.55 from the Settlement proceeds to Escobar is granted.

### *The Medical Creditors*

At the Hearing, the court heard oral arguments from both the Debtors and the Trustee as to whether the Medical Creditors could be paid directly by Mr. Escobar from the Settlement funds. Presumably, the basis for the Debtors' request is that Mr. Escobar issued the Medical Creditors "letters of protection" prior to the Petition Date. "'Letters of protection' are sometimes used by attorneys in personal injury litigation to guarantee payment to healthcare providers from the proceeds of any future recovery." *Advantage Physical Therapy, Inc. v. Cruse and d/b/a Cruse And Assocs.*, 165 S.W.3d 21, 24-25 (Tex. App. – Houston [14th Dist.] 2005, no pet.). Letters of protection may give healthcare providers a contractual right of action against the attorney who issued the letter, effectively guarantying payment of the attorney's client's medical expenses. What they do not confer, however, as a direct claim on the part of the healthcare providers

4

against the settlement proceeds themselves. They do not create a lien. *See Power v. Kilgore*, 2005 Tex. App. LEXIS 5657, at * 4-5 (Tex. App. – Fort Worth [2nd Dist.], Jul. 21, 2005) (saying that appellant attorney's "letters to the health care providers failed to create a lien on Robert's [the plaintiff] settlement money and failed to give any priority to the health care expenses over the perfected child support lien." To rise to the level of a lien, "[a] properly filed and perfected lien of a 'health care provider' or a hospital would have been necessary for the health care costs to trump the child support lien."); *see also generally Advantage Physical Therapy, Inc.*, 165 S.W.3d 21 (determining whether a letter of protection met the elements of an enforceable contract between the healthcare provider and the personal injury attorney), *Hays & Martin, L.L.P. v. Ubinas-Brache, M.D.*, 192 S.W.3d 631 (Tex. App. – Dallas [5th Dist.] 2006) (also determining whether a letter of protection met the elements of an enforceable contract between the healthcare provider and the personal injury attorney). Nor do letters of protection effectively assign any portion of a plaintiff's proceeds from a personal injury lawsuit to the plaintiff's health care providers. *Powers v. Kilgore, supra* at *5.[3] The letters of protection are essentially guaranties issued by the personal injury attorney, enforceable under contract law against the attorney in state court.

Letters of protection create no direct claim against this bankruptcy estate, however. The debtor client is not a party to the contract that letters of protection represent. True enough, the services were rendered to the debtor, and thus the healthcare providers may have an independent basis for asserting a claim against the estate – perhaps based on a direct contract between the

---

[3] The court appreciates that another bankruptcy court held that "the letters of protection constituted fully enforceable assignments of a portion of the proceeds of the settlement in connection with the automobile accident." *Choate v. Norvell & Assocs., A.M., et. al. (In re Choate)*, 184 B.R. 270, 273 (Bankr. N.D. Tex. 1995). With respect, this court declines to follow that decision. The ruling is merely conclusory and fails to provide any real support. More importantly, the holding is inconsistent with the holding of Texas court decisions on the subject. As a federal court, this court is compelled to follow the controlling precedents of state law when an issue is essentially one of state substantive law.

5

debtor and the provider, or perhaps based on some other theory, such as *quantum meruit*. But because the debtor is not a party to a letter of protection, the debtor is not obligated to the health care provider *on the basis of the letter of protection*. But even were we to assume that the Medical Creditors *did* have a direct claim against the Debtors based upon the letters of protection, the claim would only rise to the level of an *unsecured* claim, payable *pari passu* with other unsecured creditor claims. The letters of protection do not give the Medical Creditors the right to jump ahead of the Debtors' other creditors to be paid in full from the proceeds of the Settlement. For that to happen, the Medical Creditors would have to have a lien and, as we have seen, under Texas law, they do not.

These Medical Creditors, if they have an unsecured claim, cannot be paid anything out of this estate, because they failed to file a proof of claim, and the bar date has long since passed in this case. *See* FED. R. BANKR. P. 3002(c); *see also Order Combined With Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines* [Docket No. 6]. Therefore, the Medical Creditors do not have a right to receive *any* payout from this estate. *See* 11 U.S.C. § 1326 (trustee may make distributions only to creditors, defined as holders of allowed claims).

For the reasons stated above, the Motions are denied as to the relief they sought with respect to the Medical Creditors.

*Curing Plan Payment Delinquencies*

In the Motions, the Debtors also requested that they be allowed to use their portion of the Settlement to cure plan payment delinquencies. The Trustee objected to such relief and argued that "plan payment delinquencies should be cured from disposable income." *Objections*, at ¶ 1. The court finds that the Settlement proceeds are indeed disposable income and, consequently, may be used by the Debtors to cure any plan payment delinquencies. *See In re Launza*, 337 B.R. 286 (Bankr. N.D. Tex. 2005) (finding that proceeds from <u>exempt</u> property are considered

6

disposable income for purposes of § 1325(b).). Thus, the remainder of the Settlement proceeds after subtracting out Mr. Escobar's attorneys' fees – $2,333.45 ($3,500 - $1,166.55) – is the disposable income of the Debtors that can be used to cure their plan payment delinquencies.

**C. Conclusion**

For the reasons stated above, the court finds the following. First, Mr. Escobar is to be paid $1,166.55 from the Settlement funds pursuant to the retention application granted by this court. Second, the Medical Creditors may not be paid directly from the proceeds of the Settlement, notwithstanding the letters of protection that may have been issued by Mr. Escobar prior to the Debtors' Petition Date. And, indeed, because the Medical Creditors missed the bar date in this case, they are foreclosed from now filing a proof of claim against the Debtors' estate based upon any theory of liability. And, finally, because the Settlement is disposable income, the remaining Settlement funds after Mr. Escobar has been paid his fee may be used by the Debtors to cure any chapter 13 plan payment deficiencies that currently exist in the Debtors' case. An order consistent with this decision has been entered.

###